**AMERICAN SCIENCE AND ENGINEERING, INC.,**
**Plaintiff, Appellee,**

v.

**Joseph A. CALIFANO, Jr., Secretary of the Department of Health, Education, and Welfare, et al., Defendants, Appellants.**

**No. 77–1437.**

United States Court of Appeals,
First Circuit.

Argued Dec. 8, 1977.

Decided Feb. 23, 1978.

Robert S. Greenspan, Atty., App. Section, Civ. Div., Dept. of Justice, Washington, D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Edward E. Harrington, U. S. Atty., Richard D. Glovsky, Asst. U. S. Atty., Boston, Mass., and William Kanter, Atty., App. Section, Civ. Div., Dept. of Justice, Washington, D. C., were on brief, for defendants, appellants.

Sylvia J. Cox, Boston, Mass., with whom Alvin S. Hochberg, Gregory J. Englund, Broude & Hochberg, Boston, Mass., and Charles Hieken, Waltham, Mass., were on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

The Department of Health, Education and Welfare (HEW) appeals an order of the

district court preliminarily enjoining it from issuing to manufacturers other than plaintiff licenses to produce a device plaintiff developed under contract with HEW. At issue is whether the district court, or the Court of Claims, had jurisdiction to entertain the cause.

In June, 1975, plaintiff, a scientific research and development corporation, entered into a contract with HEW for the development of a computerized Tomographic X-ray scanner.[1] In exchange for funding plaintiff's work on the scanner, HEW received the exclusive authority to dispose of the device and any patents on it which might be obtained. Pursuant to a provision of the contract, after the scanner had been built, plaintiff petitioned HEW for an exclusive license to manufacture and sell it both in the United States and abroad. HEW's patent counsel instructed plaintiff by letter to apply for patents on the invention, with the understanding that HEW would retain the domestic patent rights regardless of whether the petition was granted. Foreign rights were to be assigned to plaintiff upon its request, after foreign patents had been sought. Plaintiff complied with the instructions and agency review of its petition commenced.

In a letter dated January 21, 1977, the then Assistant Secretary of Health, James F. Dickson, informed plaintiff that a determination had been made that the public interest would be served by granting plaintiff an exclusive license to the domestic rights for five years.[2] HEW waived its interest in the foreign rights. On January 28, 1977, plaintiff signed a license agreement prepared by the agency, endorsed Dickson's letter, and returned both to HEW. In reliance on the belief that it held both foreign and domestic rights to the scanner, plaintiff then expended considerable funds and manpower on marketing it.

HEW did not immediately return an executed copy of the license agreement to plaintiff, as had been promised in Dickson's letter. Instead, on April 7, 1977, it published in the Federal Register a notice of intent to grant plaintiff a license to the domestic rights for a period of five years. After public comments were received and additional review of plaintiff's petition was performed, on June 17, 1977, HEW countersigned the domestic license agreement, but unilaterally reduced the term from five to three years.

Shortly thereafter, a new Assistant Secretary, Julius B. Richmond, assumed office. In a letter dated July 21, 1977, Richmond revoked HEW's waiver of the foreign rights and cancelled the domestic license agreement on the ground that under the governing regulation, asserted to be 41 C.F.R. § 1–9.107–3(a), the agency had not had authority to license plaintiff exclusively. While plaintiff engaged in a feverish campaign to persuade the agency to reverse itself, HEW granted seven non-exclusive worldwide licenses to other developers.

Plaintiff then brought a three count complaint in the district court alleging breach of contract and violations both of the "applicable Regulations of HEW" and due process of law. It sought injunctive and declaratory relief as well as damages in the amount of $100,000,000. As alternative bases for jurisdiction plaintiff invoked 5 U.S.C. § 701 et seq. (Administrative Procedure Act), 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1343 (civil rights) and 28 U.S.C. § 1361 (mandamus). The district court entered a preliminary injunction, from which HEW now appeals.

Plaintiff recognizes that under the Tucker Act, the Court of Claims has jurisdiction

1. 1. The scanner is an x-ray system which permits a cross-sectional view of a patient's body.

2. There is dispute between the parties as to which regulations governed this determination, the federal procurement regulations for patent rights under contracts for research and development (41 C.F.R. § 1–9.107) or Health, Educa-

tion and Welfare regulations for inventions resulting from research grants, fellowship awards, and contracts for research (45 C.F.R. § 8). It appears that, under either, the grant of an exclusive license is the exception rather than the rule. See 41 C.F.R. § 1–9.107–3(a); 45 C.F.R. § 8.2(a).

over any action "upon any express or implied contract with the United States, or for liquidated or unliquidated damages . . . ." 28 U.S.C. § 1491. It seeks to avoid being subjected to that jurisdiction, however, by asserting that the challenged grant of non-exclusive licenses to potential competitors is not an action arising on a contract. Rather, the dispute is characterized as an agency action "*ultra vires*" of its authority, in violation of HEW's regulations and due process of law.

Plaintiff's arguments notwithstanding, it is clear that this is essentially a contract dispute. The focus of the complaint was the alleged abrogation of the exclusive domestic license agreement and HEW's waiver of the foreign rights, reduced to writing in the January 21, 1977 letter to plaintiff. While HEW's regulations and Fifth Amendment due process were invoked, resolution of those claims was peripheral to the core determination of whether a breach of contract had occurred. That is borne out by the relief plaintiff requested: enforcement of the agreements or monetary damages.[3] Had plaintiff's aim been rectification of an alleged due process deprivation, presumably it would have sought the hearing it claims to have been denied. It did not. Indeed, the district court recognized the contract nature of the dispute and that the remedy for it lay in the Court of Claims. Nevertheless, it enjoined HEW for the purpose of preserving the status quo until plaintiff could file an action in the Court of Claims.

The district court did not set forth the basis on which it asserted jurisdiction. It entered a temporary restraining order, then converted it into the preliminary injunction from which HEW now appeals, evidencing an intent to assert jurisdiction over the entire claim. It appears from the court's comments on the record, however, that it did not intend to entertain the whole case, but only to preserve the positions of the parties while plaintiff took its action to the

Court of Claims. To our knowledge, plaintiff did not do so. In any event, were this the court's purpose, it was an exercise of power for which we find authority nowhere in the cases. Nor can it be found in logic. Since the Court of Claims would have been without power to enjoin a contract breach, in a case properly before it, *see Glidden Co. v. Zdanok*, 370 U.S. 530, 557, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962), the district court could not have granted that temporary relief pending assertion by the Court of Claims of its exclusive authority over contract disputes in excess of $10,000. *See International Engineering Co., Division of A–T–O, Inc. v. Richardson*, 167 U.S.App.D.C. 396, 400 n. 4, 512 F.2d 573, 577 n. 4 (1975). The district court would have had the power to enjoin HEW only if it had an independent jurisdictional basis for doing so. *Compare id.* 167 U.S.App.D.C. at 399 n. 3, 512 F.2d at 576 n. 3 with *Virginia Petroleum Jobbers Ass'n v. FPC*, 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (1958). As we demonstrate *infra*, such independent jurisdiction did not exist.

Faced with similar facts, other courts have consistently rejected attempts to cast a contract dispute in different terms so as to subject it to the jurisdiction of the district court. In *International Engineering, supra*, 167 U.S.App.D.C. at 396, 512 F.2d at 573, a contractor entered into an agreement with the United States Air Force to construct a model of a long-range missile system it had developed. Included in the contract was a surrender to the government of rights in the technical data. When a dispute later arose as to the extent of the rights, the contractor similarly brought it to the district court, characterizing it as "arbitrary and capricious" agency action and not a complaint in contract. Reversing an order of the district court which enjoined the Air Force from eliminating restricted access to the data, the court of appeals concluded that because the claim that the Air Force had acted arbitrarily could not be resolved without reference to the contract, exclusive jurisdiction lay in the Court of Claims. *See*

---

**3.** Injunctive relief would not, by itself, dispose of plaintiff's claim, for although it would prevent the issuance of licenses to others, it would not establish plaintiff's alleged entitlement to an exclusive license.

*also Ove Gustavsson Contracting Co. v. Floete*, 278 F.2d 912, 914 (2d Cir. 1960); *Aktiebolaget Bofors v. United States*, 90 U.S.App.D.C. 92, 95, 194 F.2d 145, 148 (1951).

Similarly, in *Alabama Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221 (5th Cir. 1976), the Secretary of the Farmers Home Administration (FmHA) entered into a contract with plaintiff whereby plaintiff would provide "backup insurance" to applicants for FmHA loans who otherwise would have been unable to obtain the required coverage. When FmHA cancelled the contract on the grounds that the plaintiff had not had the authority to enter into it, plaintiff sued in the district court for injunctive and declaratory relief to prevent rescission of the contract, solicitation of other bids by FmHA, and disclosure of plaintiff's insurance plan, all on the grounds that the agency action had been "*ultra vires*" of its authority.[4] Even though the plaintiff had not requested money damages, jurisdiction was held to lie in the Court of Claims. "Irrespective of the terminology employed . . . the object of the instant suit is clearly to compel appellants [the agency] in their official capacities to specifically perform a contract." *Id.* at 1225–26. *See also Warner v. Cox*, 487 F.2d 1301, 1304 (5th Cir. 1974). The facts of this case are functionally indistinguishable from these authorities. Jurisdiction therefore lay exclusively in the Court of Claims. *See also Carter v. Seamans*, 411 F.2d 767, 771 (5th Cir. 1969).

Plaintiff seeks to avoid the inevitable by arguing that a payment of damages after judgment by the Court of Claims will not adequately protect its interests. It correctly points out that the Court of Claims is without authority to grant the injunctive or declaratory relief sought in the district court. *Richardson v. Morris*, 409 U.S. 464, 465, 93 S.Ct. 629, 34 L.Ed.2d

647 (1973) (per curiam); *United States v. King*, 395 U.S. 1, 5, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1968); *Glidden Co. v. Zdanok, supra*, 370 U.S. at 557, 82 S.Ct. 1459. That the Court of Claims cannot provide the precise relief requested is no grounds for denying its jurisdiction over the claim. *See International Engineering, supra*, 167 U.S. App.D.C. at 403, 512 F.2d at 580; *Warner v. Cox, supra*, 487 F.2d at 1305. As the court noted in *Alabama Rural Fire Ins. Co., supra*, 530 F.2d at 1230, the remedy for breach of a contractual obligation is damages, which the Court of Claims is fully capable of assessing.[5]

In the alternative, plaintiff argues that even if this was a contract action that could be brought in the Court of Claims, the district court also had jurisdiction because violations of the agency's regulations and due process of law were also alleged. As we have noted, the jurisdiction of the Court of Claims over suits grounded in contract is exclusive. *See Polos v. United States*, 556 F.2d 903, 904 (8th Cir. 1977); *International Engineering, supra*, 167 U.S.App.D.C. at 400, 512 F.2d at 577. Moreover, the jurisdictional bases alleged to bring this dispute within the authority of the district court are inapplicable to plaintiff's complaints.

Plaintiff first relies on the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.* The very language of § 704 of the APA belies plaintiff's claim. It provides for court review of agency action "for which there is no other adequate remedy in a court". Yet review by the Court of Claims has consistently been held to provide an adequate remedy for an alleged breach of contract by a federal agency. *See Warner v. Cox, supra*, 487 F.2d at 1304; *Bofors, supra*, 90 U.S.App.D.C. at 96, 194 F.2d at 149. Plaintiff attempts to circumvent that clear language by pointing to P.L. 94–754,

---

4. It might be that after hearing, the Court of Claims would determine that cancellation of the agreements with plaintiff violated HEW's regulations. As the court noted in *Alabama Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1227 (5th Cir. 1976), however, even an erroneous rescission would not amount to agency

action "*ultra vires*" for the purposes of establishing the district court's jurisdiction.

5. Plaintiff's damages may be difficult to pinpoint, but that is true of any claimed breach of contract.

which amended § 702 of the APA to permit district court review of actions for relief other than money damages which include "a claim that an agency or an officer or employee [of the United States] acted or failed to act in an official capacity . . ." That same amendment eliminated the jurisdictional amount required under 28 U.S.C. § 1331. The legislative history of P.L. 94–754 plainly reveals, however, that the amendment was intended to have no impact on the jurisdictional limitations imposed by the Tucker Act. S.Rep.No.94–966, pp. 4, 10 (1976). Moreover, in *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977), decided after the enactment of P.L. 94–754, the Supreme Court specifically held that "the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." Plaintiff's claim to jurisdiction under the APA must therefore fail.[6]

A second attempt to bring this action within the purview of the district court is to ground its jurisdiction on 28 U.S.C. § 1331. Plaintiff recites the enabling legislation of HEW and the agency's regulations to claim that this action "arises under" them. As

with attempts to found jurisdiction on the APA, efforts to ground it on the federal question statute have consistently been rejected by courts because the effect would be to undercut the exclusive jurisdiction of the Court of Claims. *Polos v. United States, supra*, 556 F.2d at 905 n. 5; *Crawford v. Cushman*, 531 F.2d 1114, 1126 n. 17 (2d Cir. 1976).

■■■ Inclusion of an allegation that the agency deprived plaintiff of due process of law by failing to provide notice and a hearing before cancelling the license agreement and revoking the waiver of foreign rights does not establish § 1331 jurisdiction.[7] We have concluded that the essence of the action is in contract, and plaintiff cannot "by the mystique of a different form of complaint" make it otherwise, *Sprague Electric Co. v. Tax Court*, 340 F.2d 947, 948 (1st Cir. 1965).[8] Indeed, plaintiff's own prayer for relief makes it clear that enforcement of the license agreements or money damages was its aim, not correction of the alleged due process flaw. *See Carter v. Seamans, supra*, 411 F.2d at 771. Presented with a similar hybrid pleading in *South Windsor Convalescent Home, Inc. v.*

6. Policy justifications for limiting court review of agency action under the APA have been advanced by numerous courts. *See International Engineering, supra*, 167 U.S.App.D.C. at 403, 512 F.2d at 580; *Warner v. Cox, supra*, 487 F.2d at 1305. The APA cannot be used to obtain indirectly the injunctive or declaratory relief the Court of Claims could not provide directly. *International Engineering, supra*, 167 U.S.App.D.C. at 403, 512 F.2d at 580; *Warner v. Cox, supra*, 487 F.2d at 1306.

7. Some of the authorities plaintiff cites for the proposition that federal courts may pass on claimed violations of constitutional rights are inapposite because they did not originate in federal district court and thus did not involve § 1331 jurisdiction. *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) and *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), for example, were presented to the Supreme Court pursuant to 28 U.S.C. § 1257 on a writ of certiorari to state court. Those cited cases which began in district court are distinguishable in that a federal cause of action existed which permitted the district court to exercise its jurisdiction over the dispute. *See Bivens v. Six Unknown Named Agents of the Federal*

*Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (common law tort for Fourth Amendment violation); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (42 U.S.C. § 1983); *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946) (common law tort); *Opp Cotton Mills v. Administrator*, 312 U.S. 126, 61 S.Ct. 524, 85 L.Ed. 624 (1941) (29 U.S.C. § 210); *Goldsmith v. Board of Tax Appeals*, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1926) (mandamus). Here the only cause of action pleaded to invoke § 1331 jurisdiction was for breach of contract, and as we have said, the proper forum for such disputes is in the Court of Claims.

8. Plaintiff also denotes the agency's action a violation of its civil rights and argues, although without much force, that 28 U.S.C. § 1343 jurisdiction is available to review it. As with § 1331, that jurisdictional provision only comes into play where a cause of action exists. Plaintiff alleges entitlement to relief under 42 U.S.C. § 1983. However, that is available only against state actors, not against agents of the federal government. *Soldevila v. Secretary of Agriculture*, 512 F.2d 427, 429 (1st Cir. 1975).

*Mathews,* 541 F.2d 910, 914 (2d Cir. 1976), the court concluded that "[t]he fact that plaintiff's claim is grounded on a constitutional challenge is of no consequence since, as the language of [28 U.S.C.] § 1491 makes clear, the Court of Claims, as an Article III court, is fully empowered to decide the constitutional claim." [9]

■ Finally, plaintiff evokes the district court's mandamus jurisdiction, 28 U.S.C. § 1361, to compel HEW to abide by the licensing agreements. Like the others before it, this attempt to avoid the exclusive jurisdiction of the Court of Claims over contract disputes of this nature has been rejected by the courts. *See Commonwealth of Massachusetts v. Connor,* 248 F.Supp. 656 (D.Mass.), *aff'd,* 366 F.2d 778 (1st Cir. 1966). As the Fifth Circuit noted in this same context in *Carter v. Seamans, supra,* 411 F.2d at 773, "Mandamus does not supercede other remedies, but rather comes into play where there is a want of such remedies." The alternative available in the Court of Claims fully protects plaintiff's interest. *Id; see also Warner v. Cox, supra,* 487 F.2d at 1304.[10]

Transfer of this case to the Court of Claims is in the interests of justice. *Polos v. United States, supra,* 556 F.2d at 906. The order of the district court is therefore vacated and the cause remanded with directions to transfer it to the Court of Claims.

*So ordered.*

---

**9.** Concededly, the plaintiff in *South Windsor Convalescent Home, Inc. v. Mathews,* 541 F.2d 910 (2d Cir. 1976), did not seek injunctive relief, as plaintiff in this case did. However, claims like the due process violation alleged here are typical in Court of Claims suits. *Carter v. Seamans,* 411 F.2d 767, 711 n. 5 (5th Cir. 1969).

**10.** Our decision that the district court was without jurisdiction in enjoining HEW from granting non-exclusive licenses to plaintiff's potential competitors obviates the need to resolve HEW's additional claim of procedural violations in the issuance of the injunction.